IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

AMY RENEE HARDY,                          )
        Plaintiff,                       )
                                         )
v.                                        )          CIVIL ACTION NO. 2:13-20749
                                         )
CAROLYN W. COLVIN,                        )
Acting Commissioner of Social Security,   )
        Defendant.                       )

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security

denying the Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security

Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.

By Standing Order entered August 14, 2013 (Document No. 4.), this case was referred to the

undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit

Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. §

636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for Judgment on the

Pleadings (Document Nos. 10 and 13.) and Plaintiff's Reply. (Document No. 14.)

The Plaintiff, Amy Renee Hardy (hereinafter referred to as "Claimant"), filed applications for

DIB and SSI on July 19, 2010 (protective filing date), alleging disability as of January 15, 2009, due

to degenerative disc disease, bulging disc in back, and anxiety.[1] (Tr. at 14, 157-59, 162-65, 219, 223.)

The claims were denied initially and upon reconsideration. (Tr. at 63-66, 77-79, 82-84, 90-92, 93-95.)

On April 13, 2011, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at

96.) A hearing was held on February 22, 2012, before the Honorable Rebecca B. Sartor. (Tr. at 32-60.)

---

[1] Claimant filed prior applications for DIB and SSI on July 27, 2009, alleging disability on
January 15, 2009. (Tr. at 13.)  Her claims were denied on September 15, 2009, and she did not pursue
any appeal. (*Id.*)

By decision dated April 2, 2012, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 13-25.) The ALJ's decision became the final decision of the Commissioner on May 28, 2013, when the Appeals Council denied Claimant's request for review. (Tr. at 1-4.) Claimant filed the present action seeking judicial review of the administrative decision on July 22, 2013, pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2012). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining

physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2012). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme.

When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[2] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the alleged onset date, January 15, 2009. (Tr. at 15, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from "degenerative disc disease, anxiety disorder, panic disorder and depressive disorder," which were severe impairments. (Tr. at 15, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 16, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity ("RFC") to perform sedentary level work as follows:

> [T]he [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can only occasionally climb ladders, ropes, or scaffolds. The [C]laimant can occasionally stoop. She must avoid concentrated exposure to hazards. The [C]laimant requires a sit/stand option every 30 minutes. She is limited to occasional public interaction.

(Tr. at 17, Finding No. 5.) At step four, the ALJ found that Claimant could not return to her past relevant work. (Tr. at 23, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a surveillance system monitor, product inspector, and hand packer, at the unskilled, sedentary level of exertion. (Tr. at 23-34, Finding No. 10.) On this basis, benefits were denied. (Tr. at 24, Finding No. 11.)

5

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on January 25, 1968, and was 43 years old at the time of the administrative hearing, February 22, 2012. (Tr. at 23, 39, 157, 162.) The ALJ found that Claimant had a ninth grade, or limited education and was able to communicate in English. (Tr. at 23, 40, 222, 224.) In the past, she worked as an electrician's helper and a cashier. (Tr. at 23, 55, 224, 230-37.)

 The Medical Record

The Court has considered all evidence of record, including the medical evidence and discusses it herein in relation to Claimant's arguments.

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in giving no weight to the opinions of two treating physicians, Drs. Singareddy and Jarvis and one consulting physician opinion, Dr. Schmidt, who was in agreement with the opinions of Drs. Singareddy and Jarvis. (Document No. 10 at 13.) She asserts that the ALJ failed to identify the specific inconsistencies in the opinions and substituted her opinion for the opinions of qualified medical professionals. (<u>Id.</u> at 15-17.)

In response, the Commissioner asserts that the ALJ properly explained why she found that the three physicians' opinions were not supported by the record, and therefore, substantial evidence supports the ALJ's findings. (Document No. 13 at 9-12.) The Commissioner asserts that the ALJ properly gave no weight to Claimant's treating physician, Dr. Singareddy, because his opinion was unsupported by objective findings. (<u>Id.</u> at 10.) The ALJ noted that Claimant's treatment notes were inconsistent with the conclusion that she could not work because her condition was controlled with medication. (<u>Id.</u>) The ALJ also gave Dr. Singareddy's opinion no weight because Dr. Schmidt's opinion that Claimant was probably disabled was unsupported by the evidence as a whole. (<u>Id.</u>) The ALJ noted Claimant's activities of daily living and treatment notes as evidence that she functioned well. (<u>Id.</u> at 10-11.) The ALJ gave Dr. Jarvis' opinion no weight because his opinion was too extreme and unsupported by his own treatment notes that consistently noted Claimant's pain was controlled with medication. (<u>Id.</u> at 11.) The ALJ concluded that the state agency physicians' opinions were consistent with the finding that Claimant was not as limited as she alleged, but gave Claimant the benefit of the doubt and assigned her a less restrictive RFC than the state agency physicians. (<u>Id.</u> at 11-12.) The Commissioner, therefore, contends that the ALJ set forth substantial evidence to justify his assignment of weight to the medical opinion evidence. (<u>Id.</u> at 12.)

Claimant also alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ failed properly to evaluate Claimant's credibility. (Document No. 10 at 17-18.) Claimant asserts that the ALJ based her credibility finding on the wrong assessment of treating physicians' notes as well as the misinterpretation of Claimant's testimony. (Id. at 17.) Claimant asserts that the ALJ had noted Claimant's five hour car trips to see her children and grandchildren and that she took only two breaks while doing so, which meant that she was able to sit longer than she testified. (Id.) Claimant contends, however, that she testified to having taken four or five breaks during such trips to stretch, and that the ALJ misunderstood her testimony. (Id.)

Claimant asserts that the ALJ also emphasized that Claimant pushed herself to work in the garden, despite her testimony that her typical daily activities were quite limited. (Id. at 18.) She asserts that the ALJ unfairly interpreted this isolated event to discredit her credibility. (Id.) Furthermore, Claimant asserts that the ALJ's statements that her pain was controlled with medication and that her treatment was conservative are without support in the record. (Id.) Claimant, therefore, contends that the ALJ's credibility finding is not supported by the record. (Id.)

In Reply, Claimant asserts that the Commissioner was unable to reference just the ALJ's rationale to support the ALJ's findings in discrediting the medical opinions. (Document No. 14 at 1.) Rather, the Commissioner was forced to supply post hoc rationale to explain and support the ALJ's conclusory findings. (Id.) Claimant contends that the ALJ formulated her own medical opinion and improperly overrode the opinions of the three qualified physicians. (Id. at 2.)

In response, the Commissioner asserts that the ALJ's credibility finding is supported by the substantial evidence and that the ALJ extensively analyzed the objective medical evidence. (Document No. 13 at 12-14.) The Commissioner asserts that despite Claimant's allegations, the ALJ properly found that treatment notes consistently revealed her reports that her pain was controlled with

medication. (Id. at 14.) The ALJ noted that Claimant did not experience any side effects from her medications. (Id.) The Commissioner asserts that although the ALJ created an inconsistency respecting the number of breaks Claimant took when riding in a car, she asserts that such error is harmless because her alleged four or five breaks remained inconsistent with her alleged ability to sit for only 30 minutes at a time. (Id.) Thus, the inconsistency would still affect Claimant's credibility. (Id.) Accordingly, the Commissioner contends that the totality of the record evidence demonstrates that the ALJ relied on substantial evidence in making her credibility determination and that it should be affirmed. (Id.)

Analysis.

Claimant alleges that the ALJ erred in failing to give controlling weight to her treating physicians' opinion. (Document No. 10 at 3-6.) Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2011). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the

source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ must explain in the decision the weight given to the opinions of state agency medical or psychological consultants. 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) (2011). The ALJ, however, is not bound by any findings made by state agency medical or psychological consultants and the ultimate determination of disability is reserved to the ALJ. Id. §§ 404.1527(f)(2)(I) and 416.927(f)(2)(I).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2011). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2011). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2011). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

If the ALJ determines that a treating physician's opinion should not be afforded controlling

weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6).

On July 27, 2009, Claimant's treating physician, Dr. Sanjay Singareddy, M.D., examined Claimant for a complete physical. (Tr. at 356-58.) Claimant reported minor complaints, but noted that she had decreased energy level and was sleeping well. (Tr. at 356.) Physical exam revealed that Claimant was well developed and in no acute distress. (Tr. at 357.) She was alert and oriented, with no impairment of recent or remote memory. (Id.) Her mood and affect were normal. (Id.) Dr. Singareddy noted that she had a normal gait, but had some lumbosacral tenderness and decreased flexion of the spine, with associated pain. (Tr. at 358.) He diagnosed back pain, lumbago. (Id.)

On that same date, Dr. Singareddy completed a form Physician's Summary for the West Virginia Department of Health and Human Resources. (Tr. at 579-82.) He opined that Claimant's prognosis was fair, that she was not able to work at a full-time job for more than a year due to limitations in bending, lifting, reaching, squatting, standing, and walking. (Tr. at 579.) He indicated that her standing and walking limitations were for periods of time greater than 30 minutes at a time. (Id.) He noted that Claimant had chronic low back pain. (Tr. at 581.)

On September 11, 2009, Dr. A. Rafael Gomez, M.D., a state agency physician, competed a form Physical RFC Assessment, on which he opined that Claimant was capable of performing medium exertional level work with frequent postural limitations except that she could never climb ladders, ropes, or scaffolds; and an avoidance of concentrated exposure to hazards. (Tr. at 303-11.) Dr. Gomez found that Claimant was not fully credible because her allegations were out of proportion to the medical evidence. (Tr. at 308.) He noted Claimant's activities to have included shopping, child care, cooking, and performing chores. (Tr. at 310.)

On September 28, 2009, Dr. Singareddy noted that recent MRI scans revealed disc herniation at L5-S1 with nerve root encroachment, and severe disc degeneration. (Tr. at 347.) Dr. Singareddy

diagnosed back pain, lumbago and displacement of lumbar intervertebral disc without myelopathy. (Tr. at 348.)

On October 16, 2009, John Schmidt, III, M.D., examined Claimant for complaints of low back pain. (Tr. at 328-31.) Dr. Schmidt noted on examination diffuse tenderness throughout the lumbar and dorsal spine. (Tr. at 329.) Forward bending was limited and straight leg raising was negative. (Id.) She had 5/5 strength bilaterally, intact sensation, and normal gait and station. (Id.) He noted that the lumbar MRI of September 21, 2009, revealed a significant degree of degenerative spondylitic arhtropathy at L5-S1 with a herniation fragment of disc at left L5-S1. (Id.) Dr. Schmidt assessed chronic musculoskeletal mechanical back strain superimposed on a degree of degenerative spondylitic arthropathy maximal at L5-S1. (Id.) He noted that she had a herniated disc with a chronic left S1 radiculopathy on the left without mechanical signs of surgically remediaable radiculopathy. (Id.) Dr. Schmidt recommended treatment through a pain clinic as opposed to surgical intervention. (Id.) He opined that Claimant "probably represents permanent total disability for the work force by virtue of her age, education and her previous work history, [and] her back problems." (Id.)

Dr. Singareddy noted on October 20, 2009, that Claimant's condition had a severe physical impact on her. (Tr. at 345.) On November 6, 2009, however, he noted that there was no overall impact of her condition despite her chronic back pain. (Tr. at 341.)

On November 17, 2010, Dr. Gomez completed a second Physical RFC Assessment on which he again opined that Claimant could perform medium exertional level work with frequent postural limitations except that she could never climb ladders, ropes, and scaffolds or crawl; and should avoid concentrated exposure to vibration and hazards. (Tr. at 401-08.) He noted that Claimant was credible. (Tr. at 406.)

Claimant began treating with Dr. Phillip Jarvis, M.D., on April 11, 2011, and Dr. Jarvis opined three weeks later on a form General Physical (Adults), dated August 31, 2011. (Tr. at 570-71.) Dr.

12

Jarvis opined that Claimant was permanently disabled due to lumbar degenerative joint and disc disease. (Id.)

In her decision, the ALJ gave no weight to Dr. Singareddy's opinion as the objective findings did not support it and the treatment notes were inconsistent with his conclusion that she was unable to work as her conditions were under control with medication. (Tr. at 21.) The ALJ properly discounted Dr. Singareddy's opinion. As noted above, Dr. Singareddy examined Claimant the same day he gave his opinion and indicated that Claimant had only minor complaints and his physical exam failed to reveal any significant findings. In August, 2009, Claimant reported that she was pain free. (Tr. at 573.) Likewise, the ALJ gave no weight to Dr. Schmidt's opinion because the objective findings did not support it. (Tr. at 21.) Again, Dr. Schmidt's exam revealed essentially normal findings with only limited flexion. The ALJ noted that Claimant's activities of daily living indicated that she functioned fairly well. (Tr. at 21.) He activities indicated that she cooked meals, washed dishes, dusted and vacuumed, grocery shopped, and did limited gardening. Finally, the ALJ gave Dr. Jarvis' opinion no weight for the same reasons. (Tr. at 22.) Dr. Jarvis had noted that Claimant was doing quite well on medication in November and December, 2011. (Tr. at 592-93.) Additionally, the ALJ noted that his opinion was inconsistent with the record as a whole and Claimant's activities. (Tr. at 22.)

Accordingly, in view of the foregoing, the undersigned finds that the ALJ's decision to accord no weight to the opinions of Drs. Singareddy, Schmidt, and Jarvis is supported by the substantial evidence of record. The ALJ properly found that the state agency opinion was supported by the substantial evidence of record, but even then reduced Claimant's exertional level to sedentary, giving her the benefit of the doubt.

2. Pain and Credibility.

Claimant also alleges that the ALJ erred in assessing her credibility. A two-step process is used to determine whether a claimant is disabled by pain or other symptoms. First, objective medical

evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain or symptoms alleged.  20 C.F.R. §§ 404.1529(b) and 416.929(b) (2012); SSR 96-7p; See also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).  If such an impairment is established, then the intensity and persistence of the pain or symptoms and the extent to which they affect a claimant's ability to work must be evaluated.  Id. at 595.  When a claimant proves the existence of a medical condition that could cause the alleged pain or symptoms, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative.  Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990).  A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2012).  Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons.  . . .  Factors relevant to your symptoms, such as pain, which we will consider include:
>
> > (i) Your daily activities;
> >
> > (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
> >
> > (iii) Precipitating and aggravating factors;
> >
> > (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> >
> > (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> >
> > (vi) Any measures you use or have used to relieve your pain or other symptoms

14

(e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2012).

SSR 96-7p repeats the two-step regulatory provisions:

First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities.  For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p specifically requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in assessing the credibility of an individual's statements. Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations.  A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities.

15

20 C.F.R. §§ 404.1520(c) and 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

The ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms, and credibility. (Tr. at 17-18.) The ALJ found at the first step of the analysis that Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. at 18.) Thus, the ALJ made an adequate threshold finding and proceeded to consider the intensity and persistence of Claimant's alleged symptoms and the extent to which they affected Claimant's ability to work. (Tr. at 18-23.) At the second step of the analysis, the ALJ concluded that Claimant's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. at 18.)

Claimant first asserts that the ALJ misinterpreted her testimony as to how often she stopped when she traveled. Claimant asserts that she testified to having stopped four or five times, and not the

16

two times as found by the ALJ. The undersigned finds, as the Commissioner argues, that the misunderstanding makes no difference, as Claimant testified to having been able to sit only 30 minutes at one time. Thus, whether she stopped two or five times, it remains less than the number of times to equal the 30 minutes at one time and creates an inconsistency.

Claimant further asserts that the ALJ improperly emphasized that Claimant pushed herself to work in the garden despite her testimony that her daily activities were quite limited and that she worked in the garden on an isolated occasion. Claimant is correct that the ALJ noted that she pushed herself with respect to working in the garden. Nevertheless, the ALJ also considered all the factors set forth in the Regulations in considering Claimant's credibility. Thus, the undersigned finds that although the ALJ may have noted this activity, it was not given any more emphasis than any other activity. The ALJ properly considered Claimant's credibility pursuant to the Regulations and the undersigned finds that the assessment is supported by the substantial evidence of record.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings (Document No. 10.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 13.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then fourteen days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections,

identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1366 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985), <u>reh'g denied</u>, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); <u>Wright v. Collins</u>, 766 F.2d 841, 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir.), <u>cert. denied</u>, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Johnston, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: September 2, 2014.

R. Clarke VanDervort
United States Magistrate Judge

18