# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

# CHARLESTON DIVISION

AMY RENEE HARDY,

           Plaintiff,

v.                                   CIVIL ACTION NO.   2:13-cv-20749

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

           Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Amy Renee Hardy's Complaint [ECF 2] seeking review of the final decision of the Commissioner of Social Security ("Commissioner"). By standing order entered April 8, 2013, and filed in this case on August 14, 2013, this action was referred to United States Magistrate Judge R. Clarke VanDervort for submission of proposed findings and a recommendation for disposition ("PF&R"). On September 2, 2014, Magistrate Judge VanDervort entered his PF&R, which recommended that this Court affirm the final decision of the Commissioner and dismiss this matter from the Court's docket. (ECF 15.) On September 16, 2014, Plaintiff filed timely objections to the PF&R (ECF 16).

For the reasons that follow, the Court **OVERRULES** Plaintiff's objections, **ADOPTS** the PF&R to the extent it is not inconsistent with this Opinion, and **AFFIRMS** the final decision of the Commissioner.

*I. PROCEDURAL BACKGROUND*

The facts concerning this matter are more fully set forth in the PF&R and need not be repeated here at length. In short, Plaintiff filed an application for disability insurance benefits and supplemental security income on July 19, 2010, (ECF 9-2 at 14), alleging disability as of January 15, 2009, due to degenerative disc disease, a bulging disc in back, and anxiety (ECF 9-7 at 35). The application was denied initially and upon reconsideration. (ECF 9-4 at 12–21, 25–30.)

A hearing was held by video before Administrative Law Judge Rebecca Sartor on Febraury 22, 2012. (ECF 9-2 at 35–63.) On April 2, 2012, the ALJ issued an unfavorable decision. (ECF 9-2 at 11–26).[1] The Appeals Council denied review of the ALJ's decision on May 28, 2013. (ECF 9-2 at 2–5.) Thereafter, on July 22, 2013, Plaintiff filed his Complaint in this Court. (ECF 2.)

*II. STANDARD OF REVIEW*

The Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Failure to file timely objections constitutes a waiver of de novo review and the Petitioner's right to appeal this Court's Order. 28 U.S.C. § 636(b)(1); *see also Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). In addition, this Court need not conduct a de novo review when a party "makes general and conclusory objections that do not

---

[1] The ALJ found at step two of the sequential disability analysis that Plaintiff had four severe impairments—degenerative disc disease, anxiety disorder, panic disorder, and depressive disorder. (*Id.* at 16.) The ALJ found at step three that Plaintiff's impairments did not meet or equal the level of severity of any listing in Appendix 1 and that the impairments did not prevent Plaintiff from performing sedentary work, with some exceptions. (*Id.* at 17–18.) Although finding at step four that Plaintiff was unable to perform any past relevant work, the ALJ found at step five that there are jobs in the national economy that Plaintiff can perform. (*Id.* at 24.)

2

direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

## III. DISCUSSION

The Court will now review de novo those parts of the PF&R to which Plaintiff has made a proper objection. For the reasons that follow, the Court **OVERRULES** Plaintiff's objections.

Judicial review of a final decision regarding disability benefits is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied. *See* 42 U.S.C. § 405(g) ("The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) ("A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law."). Substantial evidence requires more than a scintilla, but less than a preponderance, of the evidence. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, (1938). "In reviewing for substantial evidence, [the court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the Court must defer to the Commissioner's decision. *Id.* (citing *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)).

Assuming error by the Commissioner, "reversal is not required where the alleged error 'clearly had no bearing on the procedure used or the substance of the decision reached'" by the ALJ. *Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004). "[T]he burden of showing that

3

an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Plaintiff bears the burden of proving to the Commissioner that she is disabled within the meaning of the Social Security Act. 42 U.S.C. § 423(d)(5); *English v. Shalala*, 10 F.3d 1080, 1082 (4th Cir. 1993). The Commissioner uses a five-step process to evaluate a disability claim.[2] *See* 20 C.F.R. §§ 404.1520(a), 416.920(a)(4). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If a decision regarding disability can be made at any step of the process, however, the inquiry ceases. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

*A. Opinion Evidence*

Plaintiff first objects that the ALJ erred in rejecting the opinion evidence of three of Miller's physicians—Phillip Jarvis, M.D., John H. Schmidt, III, M.D., and Sanjay Singareddy, M.D.

According to the Social Security Regulations, the ALJ "will" give a treating source's medical opinion controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). If not entitled to controlling weight, the value of the opinion must be weighed and the ALJ must consider: (1) the length of

---

[2] "Under the process the ALJ must determine in sequence: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether that impairment meets or equals the medical criteria of Appendix 1 which warrants a finding of disability without considering vocational factors; and (4) if not, whether the impairment prevents him from performing his past relevant work. By satisfying either step 3 or 4, the claimant establishes a prima facie case of disability. The burden then shifts to the Secretary and leads to the fifth and final inquiry in the sequence: whether the claimant is able to perform other work considering both his remaining physical and mental capacities (defined as residual functional capacity) and his vocational capabilities (age, education, and past work experience) to adjust to a new job." *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981).

treatment of the claimant by the treating source; (2) the frequency of examination by the treating source; (3) the nature and extent of the treatment relationship; (4) the support of the treating source's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating source. 20 C.F.R. §§ 404.1527(c), 416.927(c). The ALJ must give "good reasons" for the weight given to the treating source's opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Plaintiff's first argument can be dismissed at the outset. Plaintiff argues that the ALJ erred in not explaining her rejection of the opinion evidence according to the factors listed in 20 C.F.R. §§ 404.1527(c), 416.927(c). (ECF 16 at 2.) When an ALJ does not give a treating source's medical opinion controlling weight, the opinion must either fail to be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or be "inconsistent with the other substantial evidence in [the] case record." The "good reasons" the ALJ must give when not according controlling weight to a medical opinion by a treating source should make clear to a reviewing judge why the ALJ determined the opinion to be either not supported by clinical data or not consistent with the record. As such, if the ALJ does not point to a lack of clinical evidence, the ALJ would naturally be required to discuss factor (5), that is, consistency with the record. Otherwise, while the ALJ also has a duty to "consider" each of the remaining six factors listed above, that does not mean that the ALJ has a duty to discuss them when giving "good reasons." Stated differently, the regulations require the ALJ to consider the six factors, but do not demand that the ALJ explicitly discuss each of the factors.

5

Plaintiff also argues that the ALJ failed to give "good reasons" for giving no weight to the medical opinions provided by Dr. Jarvis, Dr. Singareddy, and Dr. Schmidt. This argument will be considered with respect to each doctor.

### 1. Dr. Jarvis

Dr. Jarvis is one of Plaintiff's treating physicians. He opined that Plaintiff was unable to work full-time and was not suited for any job of which he was aware. (ECF 9-2 at 23.) The ALJ stated that he gave no weight to Dr. Jarvis' opinions because they were inconsistent with his treatment records, which consistently indicated that Plaintiff's pain was controlled with medication. (*Id.*) The ALJ also stated that Plaintiff's acknowledged daily activities were inconsistent with the limitations described by Dr. Jarvis. (*Id.*) Thus, by pointing to inconsistencies between the opinion and what appears to be other substantial evidence in the record, the ALJ has provided "good reasons" for according Dr. Jarvis' opinion no weight.

The Court considers next whether the ALJ's proffered reasons are in fact supported by substantial evidence. Substantial evidence supports the ALJ's conclusion that Plaintiff's pain is controlled by medicine. Plaintiff testified that her pain is eased when she takes medicine but intolerable when she does not. (ECF 9-2 at 44.) The record contains fifteen treatment notes by Dr. Jarvis, spanning from March 4, 2010, to July 11, 2011, in which Plaintiff indicates medicine as one of or the only thing making her pain "better." (ECF 9-12 at 10, 16, 22, 28, 32, 37, 44, 50, 53, 59, 64, 77, 85; ECF 9-13 at 6, 15.) In all of them Plaintiff describes her worst amount of pain as a ten on a ten-point scale. In nine of the treatment notes Plaintiff describes her least amount of pain as a four; in four she describes it as six or seven. Dr. Jarvis in his notes states that "patient is doing well on medication" (October 19, 2010) (ECF 9-12 at 55); "[Plaintiff'] pain has been doing quite well" (November 17, 2010) (*id.* at 51); "Percocet is maintaining her pain at a

6

satisfactory level" (December 12, 2010) (*id.* at 46); "[a]verage pain level is 4-5/10 which is good" and "[b]ack pain is well controlled" (January 17, 2011) (*id.* at 39); and "[Plaintiff's] medication is still helping" (February 14, 2011) (*id.* at 35).

Substantial evidence also supports the ALJ's conclusion that Plaintiff's acknowledged daily activities are inconsistent with the limitations on doing *any* kind of work (even sedentary work) described by Dr. Jarvis. Plaintiff testified that she is able to drive to the grocery store (ECF 9-2 at 41), push a shopping cart (*id.* at 50), fix breakfast and lunch (*id.* at 50), and dust and wash dishes (*id.* at 51).

### 2. Dr. Singareddy

Dr. Singareddy is also one of Plaintiff's treating physicians. He opined that Plaintiff was unable to perform full-time work for one year. (ECF 9-2 at 22.) The ALJ stated that he gave no weight to Dr. Singareddy's opinions because they were inconsistent with treatment notes indicating that Plaintiff's condition was under control with medication. For the reasons stated above, this explanation is both a "good reason" and supported by substantial evidence.

### 3. Dr. Schmidt

According to Plaintiff, although Dr. Schmidt was a consulting physician, he was not a treating physician. (ECF 10 at 13; ECF 16 at 2.) Thus, the ALJ was not required to give "good reasons" as to why he gave Dr. Schmidt's opinion no weight. *See* § 20 C.F.R. § 404.1527(a)(2) & 416.927(a)(2) (the "good reasons" procedural requirement applies to decisions to give non-controlling weight to opinions by a claimant's treating source).

### B. Pain and Credibility

Plaintiff's second objection is that the ALJ did not properly evaluate the credibility of Plaintiff's statements about her pain. (ECF 16 at 4–5.)

The determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged. *See* 20 C.F.R. §§ 404.1529(b), 416.929(b). Then, the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated. *See* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). This evaluation must take into account all the available evidence, including the claimant's statements about her pain. *See id.* The ALJ is required to make credibility determinations about allegations of pain, and such determinations must refer specifically to the evidence informing the ALJ's conclusions. *See Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). As part of the pain and credibility analysis, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:
>
> (i) Your daily activities;
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and

> > (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2012).

Plaintiff's testimony includes several claims touching on the severity of her symptoms. Her back started hurting in 2008 and has gotten progressively worse. (ECF 9-2 at 43.) In 2009 she had to quit her last job, that of a housekeeper, due to her back pain. (*Id.* at 42.) She is unable to work now due to her back pain. (*Id.* at 43.) She is unable to bend. (*Id.* at 43, 51) Medicine eases but does not completely relieve her pain; if she doesn't take her medicine the pain is intolerable. (*Id.* at 44.) The week before the February 22, 2012, hearing before the ALJ, her legs went numb as she was getting out of the shower, and she fell. (*Id.*) She can only sit 20 to 30 minutes before her legs go numb and her back pain gets bad, she can only stand for 30 to 45 minutes before she has to sit again, and she can only walk for about 20 minutes. (*Id.* at 45–46.)

The ALJ found that Plaintiff's testimony is not fully credible regarding the severity of her complaints and is credible only to the extent it is not inconsistent with the ALJ's residual functional capacity assessment. (ECF 9-2 at 19.) According to the ALJ's residual functional capacity assessment, Plaintiff is able perform sedentary work as defined in §§ 20 C.F.R. 404.1567(a) and 416.967(a), except that she can only occasionally climb ladders, ropes, or scaffolds, can occasionally stoop, must avoid exposure to hazards, requires a "sit/stand option" every 30 minutes, and is limited to occasional public interaction. (*Id.* at 18.)

The ALJ recited a number of items of specific evidence on which he relied in making her credibility determination. (*Id.* at 19–21.) Dr. Schmidt indicated on October 16, 2009, that Plaintiff denied any tingling or numbness in her extremities. Dr. Singareddy indicated on December 17, 2009, that Plaintiff felt well, with no complaints and reported exercising four days

9

per week. Mustafa Rahim, M.D., indicated on November 5, 2010 that Plaintiff had denied any weakness or numbness in her legs. Dr. Jarvis indicated on November 17, 2010, that medication had kept Plaintiff's pain at a satisfactory level, and on January 17, 2011, Dr. Jarvis indicated on July 12, 2011, and again on August 9, 2011, that Plaintiff's pain was well-controlled and that Plaintiff did not need any change in medication. Dr. Jarvis indicated on July 12, 2011 that Plaintiff's medication was working well. The ALJ concluded by stating that "claimant's treatment notes consistently reveal she reports that her pain is controlled with medication and this supports concluding she is not limited as alleged." (*Id.* at 21.) The ALJ has satisfied her duty to point to substantial evidence in the record informing her credibility determination.[3]

Plaintiff argues that the ALJ based her credibility findings almost entirely on statements in the medical records rather than on Plaintiff's testimony and her demeanor. (ECF 16 at 4.) However, the ALJ is not required to rely on Plaintiff's demeanor or testimony in making her credibility determination and may rely on the medical record. Plaintiff also argues that the ALJ misinterpreted Plaintiff's treating physicians' notes. Plaintiff's objection points to "one single occasion" (a treatment note by Dr. Jarvis of January 17, 2011) in which Dr. Jarvis noted that Hardy's pain level was "4-5/10 which is good." (ECF 16 at 5; cf. ECF 9-12 at 39.) Without pointing to any additional specific evidence in the record, Plaintiff suggests that the Court should

---

[3] The ALJ went on to buttress his list of evidence with the observation that Plaintiff's testimony indicated that on a five-hour drive Plaintiff only stopped twice due to the pain, and that she was capable of gardening, which is inconsistent with her claim to have such a restricted ability to sit, stand, and walk. (ECF 9-2 at 21.) A review of Plaintiff's testimony reveals that Plaintiff testified to stopping four or five times during the five-hour drive in question, not just twice. (*Id.* at 52.) Further, a fair reading of Plaintiff's testimony indicates that she stated that, while she used to garden and would like to garden, she no longer can. (*Id.* at 51.) She mentioned that a year before the hearing, as a result of helping out in the garden, she had to spend two days in bed. (*Id.* at 52.) While it appears from the record that the ALJ misinterpreted these statements by the Plaintiff, it does not appear that he relied solely on these statements. The two doctors' statements from 2009 and 2010 about Plaintiff's lack of numbness also do not appear to be relevant, because Plaintiff testified that her first bout of numbness began in February 2012. The ALJ sufficiently discharged her burden by pointing to the above evidence as to the effect of Plaintiff's medication.

search through the rest of a 711-page record to find additional instances in which Plaintiff consistently complained of pain and to find that the rest of Dr. Jarvis' treatment notes allegedly "indicated only at times that [Plaintiff] experienced *improved* pain" from the prescribed medications. The Court declines to engage in such an exercise and concludes that this portion of Plaintiff's objection is too vague and conclusory. Moreover, it is not this Court's duty to weigh the evidence in the record as to the sufficiency of the ALJ's interpretation of the evidence to which he has pointed. The ALJ has pointed to substantial evidence in the record informing her credibility determination, and that is the end of the Court's inquiry.

Accordingly, the ALJ's credibility determination was supported by substantial evidence.

## *IV. CONCLUSION*

For the reasons stated herein, the Court **OVERRULES** Plaintiff's objections [ECF 16], **ADOPTS** the PF&R [ECF 15] to the extent it is consistent with this Memorandum Opinion and Order, **AFFIRMS** the final decision of the Commissioner, **DISMISSES** Plaintiff's Complaint [ECF 2], and **DIRECTS** the Clerk to remove this case from the Docket.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: September 30, 2014

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE